UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD EIVICH,<br><br>      Plaintiff,<br><br>    v.<br><br>EAST GREENWICH TOWNSHIP, *et al.*,<br><br>      Defendants. | Case No. 20–cv–06851–ESK–EAP<br><br>OPINION |

**KIEL, U.S.D.J.**

    **THIS MATTER** is before the Court on the motion for summary judgment (Motion) filed by defendants East Greenwich Township, Sergeant Michael Robostello, and former Chief of Police Anthony Francesco. (ECF No. 119, 119–1 (Mov. Br.).) Plaintiff filed an opposition to the Motion (Opposition) (ECF No. 123–1 (Opp'n Br.))[1], in response to which defendants filed a reply (Reply) (ECF No. 124 (Reply Br.)). For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

    **I.  FACTUAL BACKGROUND**

    On September 21, 2019, plaintiff and his brother-in-law, Andrew Melnychuk, observed a speeding motorcycle and ATV racing in front of Melnychuk's home. (ECF No. 119–4 (Mov. Br. Ex.) D–1 p.4.) Melnychuk went into the street to gesture to the operators of the motorcycle, later discovered to be Cole Atkinson, and ATV to slow down. (*Id.*) Cole proceeded

---

[1] Plaintiff failed to comply with paragraph six of my rules and preferences directing parties to "not incorporate my reference, in their briefs, their numbered statements of material facts … or responses thereto as a substitute for a statement of facts." (*See* Opp'n Br. p.5.)

directly towards Melnychuk at a fast speed. (*Id.*) When attempting to swerve around Melnychuk, Cole lost control of his motorcycle. (*Id.*) Shortly thereafter, Cole's mother, Robin Atkinson, and brother, Stanley Atkinson, came to Melnychuk's home and a physical fight ensued. (*Id.* pp. 4, 5.)[2]

At 6:04 p.m., the Township's police department dispatched patrols to the scene. (Mov. Br. Ex. D–3 p. 52.) Robostello arrived without any backup and observed a motorcycle in the roadway and multiple people, including plaintiff and Stanley, fighting on Melnychuk's front lawn. (*Id.*; Mov. Br. Ex. D–9 at 18:03:36–18:03:47.)[3] About 25 people were at the scene. (Mov. Br. Ex. D–19 p. 255.) Robostello activated his siren, exited his patrol car, and directed everyone to "break it up" and get "on the ground." (Mov. Br. Ex. D–3 p. 52; Mov. Br. Ex. D–9 at 18:03:36–18:03:47.) Stanley ran over to Robostello, who again ordered him to the ground. (Mov. Br. Ex. D–3 p. 52; Mov. Br. Ex. D–9 at 18:03:36–18:03:47.) While Robostello was rendering aid to Melnychuk, Stanley ran back to plaintiff to reengage in fighting. (Mov. Br. Ex. D–3 p. 52; Mov. Br. Ex. D–9 at 18:03:47–18:04:00.) Robostello again separated Stanley and plaintiff and repeated his order for everyone to stay down. (Mov. Br. Ex. D–3 p. 52; Mov. Br. Ex. D–9 at 18:03:47–18:04:00.) Robostello put his knee in Stanley's back and handcuffed him. (Mov. Br. Ex. D–3 p. 52; Mov. Br. Ex. D–19 p. 251.) Plaintiff alleges that he did not hear Robostello's orders, and because he "kind of felt defenseless laying on the ground," he stood up. (Mov.

---

[2] Bystanders captured portions of the fight on their cellphones. (Mov. Br. Ex. D–8, D–10.) These videos were provided to the Court in a thumb drive that remains in the possession of the Court pursuant to Court policy. The same applies for the video files at Exhibits D–7, D–9, D–11, and D–12.

[3] Robostello was off duty when he received the dispatch. (Mov. Br. Ex. D–19 pp. 253, 254.) Since he was near the scene, he attended to the incident but did not have his body-worn camera with him. (*Id.*) Instead, his patrol vehicle's recording software captured part of the incident. (*Id.*; Mov Br. Ex. D–9.)

Br. Ex. D–2 pp. 39–41.)   Plaintiff emphasizes that although "at that point, [he] didn't have any broken bones," Robostello commanded him to lay face-down on the ground and plaintiff immediately felt a lot of force to his back.   (*Id.* pp. 26–32, 34 40.)   Robostello had put his knee into plaintiff's back to handcuff him.   (*Id.*)   Plaintiff does not know whether Robostello used one or both knees because Robostello was behind him.   (*Id.* pp. 34, 40.)

Robostello has a different account of what happened after he handcuffed Stanley.   According to Robostello, he saw plaintiff crawling away and, for the third time, disobey his order to stand down.   (Mov. Br. Ex. D–3 p. 52; Mov. Br. Ex. D–19 p. 251.)   Robostello tripped as he was heading towards plaintiff.   (Mov. Br. Ex. D–19 pp. 250, 251.)   Robostello then got on his knees and came to his feet.   (*Id.*)   While in a squatted position, Robostello placed his knee in plaintiff's back for approximately ten seconds and handcuffed him.   (*Id.* at pp. 250, 251, 260; Mov. Br. Ex. D–3 p. 52.)[4]   Robostello explained that he "was trying to just get the whole situation under control."   (Mov. Br. Ex. D–19 p. 251.)   Consistent with his training, Robostello was permitted to place his knee on a subject's back to stabilize himself and the subject when leaning over to handcuff the subject.   (*Id.* p. 246.)

Plaintiff, walking of his own accord, was escorted to a patrol vehicle.   (Mov. Br. Ex. D–10 at 4:19.)   While seated in the back seat of the patrol vehicle, plaintiff explained to Robostello's supervisor, Lieutenant Kyle Messick, that he had been defending himself and was upset about getting arrested.   (Mov. Br. Ex. D–12 at 20:40–24:40.)   Messick uncuffed plaintiff and clarified to him that he was not under arrest.   (*Id.*)   Plaintiff told Messick that he sustained a

---

[4] Videos of the incident briefly shows Robostello kneeling on Melnychuk's front lawn attending to who appears to be plaintiff laying on the ground.   (Mov. Br. Ex. D–10 at 0:02, 0:13–0:28.)   Robostello then walks over to who has been identified as Stanley.   (*Id.*)   Stanley is seen sitting up and Robostello crouches behind him.   (*Id.*)

3

severe back injury two weeks earlier from a motor vehicle incident and that in addition to Stanley having jumped him, Robostello stuck his knee into his back. (*Id.* at 20:40–24:40, 32:00–33:10.) Messick explained to plaintiff that Robostello acted as such to get the situation under control. (*Id.* at 33:10–33:35.)

In response to Messick asking plaintiff whether he wanted an ambulance, plaintiff said he would visit an urgent care himself. (*Id.* at 24:28–24:34.) Nonetheless, ambulance personnel attended to plaintiff and transported him to the hospital. (*Id.* at 38:20–39:00; Mov. Br. Ex. D–6.) Plaintiff complained to hospital staff about facial, back, and side pain sustained while trying to break up a fight. (Mov. Br. Ex. D–6 p. 87.) Plaintiff was discharged the next morning on September 22, 2019. (*See* generally Mov. Br. Ex. D–6.) That evening, Messick visited plaintiff at his home and prepared a supplemental report. (Mov. Br. Ex. D–13 p. 107.) The supplemental report provides plaintiff's version of the incident but does not mention Robostello. (*Id.*)

On September 25, 2019, plaintiff provided a recorded statement of the incident to Detective Daniel Abate. (Mov. Br. Ex. D–4 pp. 54–60.) Plaintiff said that Stanley was hitting him like a mixed martial arts fighter and that he was half beaten to death, but attributed his broken ribs and damaged lungs to Robostello having "flopped on [him] with his knees." (*Id.* pp. 57, 58.) Abate gave plaintiff the option to open an internal affairs investigation against Robostello, but plaintiff explained that he did not yet know how he was going to proceed. (*Id.* pp. 58, 59.)

Robostello entered on September 26, 2019, a use of force report[5] to explain why he placed his knee in Stanley's and plaintiff's back. (Mov. Br. Ex. D–14

---

[5] Although Robostello testified at his deposition that he had not prepared a use of force report for this incident (Mov. Br. Ex. D–19 p. 244), the report was produced during discovery (Mov. Br. Ex. D–14 pp. 109–111). Robostello explained that because

4

pp. 109–111.) Robostello reported that because plaintiff was resisting police officer control and was actively fighting, plaintiff was put in a compliance hold. (*Id.*) Robostello noted that plaintiff was not armed during the incident. (*Id.* p. 111.) Abate reviewed Robostello's use of force report and determined that Robostello "follow[ed] the proper course of action for a scene of this magnitude, without any immediate backup by his side." (*Id.* p. 110.)

On October 2, 2019, plaintiff emailed the Township's mayor about the incident and complained of Robostello injuring him. (Mov. Br. Ex. D–15 pp. 113, 114.) Plaintiff described Robostello as having jumped on his back with all his weight, knocking the wind out of him and causing him to break his ribs. (*Id.* p. 114.) Plaintiff's email was referred to the Township solicitor, who advised plaintiff that although the incident was under active investigation, plaintiff could speak with the Township's police department about filing a formal complaint. (*Id.* pp. 114, 115.) That same day, plaintiff returned to speak with Abate about obtaining documents and records from the incident. (Mov. Br. Ex. D–16.) Abate told plaintiff that an investigation into the incident was pending, but plaintiff could lodge an internal affairs complaint against Robostello. (*Id.*) Plaintiff said that he did not want to pursue anything until he had more information. (*Id.*)

In response to interrogatories, plaintiff stated that because Robostello had jumped on him and drove his knee into his back, he sustained broken ribs and a collapsed lung. (Mov. Br. Ex. D–5 p. 63.) Plaintiff added that Robostello "ripped his arms behind his back" and "roughly threw him in the rear of a patrol vehicle where [he] was held against his will." (*Id.*) Plaintiff noted that at that time, he complained to another officer about having trouble breathing. (*Id.*)

---

he was deposed four years after the incident, and he had not actively fought plaintiff, he forgot that he prepared such a report. (Mov. Br. p. 15.)

5

The only treatment plaintiff received for his ribs was at the hospital on the day of the incident. (Mov. Br. Ex. D–2 p.48.) Plaintiff underwent physical therapy and received injections for his shoulder pain. (ECF No. 123–13 p.2.)

## II. PROCEDURAL HISTORY

Plaintiff commenced this action on June 4, 2020. (ECF No. 1 (Compl.)). Pursuant to 42 U.S.C. §1983 and the New Jersey Civil Rights Act (NJCRA), plaintiff's complaint asserts claims for excessive force, false arrest/imprisonment, abuse of process, and unlawful policy, practice or custom and inadequate training claims. (*Id.*) Plaintiff also asserts claims for assault and battery, intentional infliction of emotional distress, and negligence under the New Jersey Tort Claims Act (NJTCA). (*Id.*)[6]

On August 24, 2020, Stanley moved to dismiss the claims asserted against him. (ECF No. 8.) Stanley's motion to dismiss was granted in part on March 8, 2021. (ECF Nos. 28, 29.) This action was stayed between June 2021 and January 2023 during the pendency of Stanley's criminal proceedings involving the fight. (ECF Nos. 34, 63.) On May 6, 2024, the Court dismissed the claims against Stanley upon the parties' stipulation. (ECF Nos. 88, 89.) With leave from the Court, the Township, Robostello, and Francesco filed a third-party complaint against Stanley on July 9, 2025. (ECF Nos. 101, 102.) Pursuant to the Court's briefing schedule (ECF No. 115), the Motion was filed on December 13, 2024 (Mov. Br.). The Opposition was filed on January 21, 2025. (Opp'n Br.). The Reply was filed on January 27, 2025. (Reply Br.)

---

[6] Plaintiff named Stanley in only the false arrest/imprisonment and NJTCA claims. (Compl. ¶¶46–66.) It is unclear whether plaintiff intended to assert his supplemental state law claim for false arrest/imprisonment under the NJCRA or NJTCA. (*See* Compl. ¶¶52–56.)

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the burden of demonstrating the absence of any genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," and credibility determinations are for the fact finder. *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). However, "the existence of a videotape capturing the events underlying an excessive force claim presents an 'added wrinkle' to this standard." *Kaplon v. Madison Police Dep't*, No. 20–20559, 2025 WL 892884, at *3 (D.N.J. Mar. 24, 2025) (quoting *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* (quoting *Scott*, 550 U.S. at 380). "Under such circumstances, a court must view 'the facts in the light depicted by the videotape.'" *Id.* (quoting *Scott*, 550 U.S. at 381); *see Knight v. Walton*, 660 F. App'x 110, 112 (3d Cir. 2016) (noting that when a recording blatantly contradicts the non-movant's version of the facts such that a reasonable jury could not believe it, "the Court shall view the facts as depicted in the recording, rather than in the non-movant's favor").

## IV. DISCUSSION

### A. <u>Section 1983 and NJCRA Claims</u>

Section 1983 establishes a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage … depriv[es] [another] of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. To succeed on such a claim, a plaintiff must show: "(1) the violation of a right secured by the Constitution or laws of the United States and (2) that the alleged deprivation was committed or caused by a person acting under color of state law." *Kaplon*, 2025 WL 892884, at *3 (quoting *Roberson v. Borough of Glassboro*, 570 F. Supp. 3d 211, 226 (D.N.J. 2021)). Meanwhile, "[t]he NJCRA 'is a state corollary to [Section] 1983'" that "creates a private right of action for the violation of civil rights secured under the New Jersey Constitution." *Id.* (quoting *Armstrong v. Sherman*, No. 09–00716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010)). Since NJCRA is interpreted analogously to Section 1983, I will analyze plaintiff's NJCRA claims though the lens of Section 1983. *Id.*

### 1. Claims Against Robostello

#### a. Excessive Force

"The right to be free from excessive force during a seizure emanates from the Fourth Amendment's prohibition against unreasonable seizures." *Kaplon*, 2025 WL 892884, at *7. "A seizure occurs only 'when [a police officer], by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Id.* (quoting *United States v. Crandell*, 554 F.3d 79, 84 (3d Cir. 2009)). "Police officers are privileged to commit a battery pursuant to a lawful arrest, but the privilege is negated by the use of excessive force." *Id.* (quoting *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633–34 (3d Cir. 1995)).

"A claim for excessive force under the Fourth Amendment requires a plaintiff to show that a seizure occurred and that it was unreasonable." *Id.* (quoting *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002)). To determine the reasonableness of the force, courts must balance: "(1) the severity of the crime at issue[;] (2) whether the suspect poses an immediate threat to the safety of the officers or others[;] and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* The Third Circuit has also outlined the following factors to consider: (1) "whether the force applied caused injury"; (2) "the possibility that the suspect is violent or dangerous"; (3) "the duration of the police officers' action"; (4) "whether the force occurred while officers were effecting an arrest"; and (5) "the possibility that the suspect may be armed." *Id.* These factors must be weighed "objectively and 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

9

Defendants argue that because plaintiff's excessive force claim is based on speculation and conjecture and Robostello's use of force was reasonable, this claim should be dismissed. (*See generally* Mov. Br.; Reply. Br.) Defendants note that plaintiff offers varying accounts of the force Robostello used. (Mov. Br. pp. 28–30; Reply Br. pp. 4–10.) For example, when speaking to Messick while in the back of the patrol vehicle, plaintiff initially said that "he roughed me up and put his knee on my back," without identifying the "he." (Mov. Br. p. 28.) Plaintiff allegedly did not complain to hospital staff about Robostello's actions and, only several days after the incident, did plaintiff say that Robostello "flopped" on top of him. (*Id.* p. 29.) Plaintiff later changed his story to say that Robostello "jumped" on him and drove his knee into his back while also ripping his arms, which caused him injuries. (*Id.*) Furthermore, plaintiff fails to present evidence that his injuries were in fact caused by Robostello. (*Id.* p. 18; Reply Br. p. 10.) Plaintiff testified that he did not see Robostello after Stanley was handcuffed. (Reply Br. p. 10.) Thus, defendants question plaintiff's account of the incident. (Reply Br. p. 10.) Defendants also argue that considering that Robostello was responding to a chaotic scene without backup, and plaintiff admitted that Robostello needed to get the scene under control, Robostello's use of force was not excessive. (Mov. Br. p. 27; Reply Br. p. 12.)

I find that the reasonableness of Robostello's use of force is a triable issue for a jury. *See Rivas v. City of Passaic*, 365 F.3d 181, 199 (3d Cir. 2004) (explaining that when an injured party presents facts suggesting that he presented no threat to the officers, the reasonableness of a takedown is for the jury). The parties agree that Stanley was the aggressor and plaintiff was the victim. (Opp'n Br. p. 8.) Thus, plaintiff argues that by the time Robostello used forced on plaintiff, Stanley was already handcuffed, and the scene was under control. (*Id.* p. 11.) Although the videos from the incident establish

that Robostello repeatedly directed everyone to stay down, a dispute exists as to whether plaintiff heard Robostello's commands and whether plaintiff merely stood up or was crawling away after Stanley was handcuffed. (*Id.* pp. 11, 21.) Defendants have neither argued nor presented evidence that plaintiff was an immediate threat or resisting arrest. (*Id.* p. 11.) Plaintiff was uncuffed upon sitting in the patrol vehicle and was neither arrested nor charged. (*Id.*) Factual questions exist as to why Robostello needed to stabilize plaintiff with his knee and the reasonableness of the level of force used by Robostello. (*Id.* p. 11.) Robostello testified that he "did not use any type of physical force" and that "[i]t was just contact affecting the arrest." (Reply Br. p. 9; Mov. Br. Ex. D–19 p. 252.) Plaintiff testified that Robostello "flopped" on his back. (Mov. Br. Ex. D–4 pp. 57, 58.) Furthermore, regardless of whether plaintiff's injuries were caused by Robostello's actions, an officer can violate a person's right to be free from excessive force in the absence of physical injury. *Velius v. Twp. of Hamilton*, 754 F. Supp. 2d 689, 695 (D.N.J. 2010), *aff'd*, 466 F. App'x 133 (3d Cir. 2012). Accordingly, the Motion will be denied as to this claim.[7]

---

[7] "Just as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis." *Curley*, 298 F.3d at 278. Therefore, I need not address Robostello's assertion of qualified immunity. *See Helms v. Ryder*, No. No. 14–02470, 2017 WL 1356323, at *5 (D.N.J. Apr. 12, 2017) (observing that step one of the qualified immunity analysis as to whether there was a constitutional violation is essentially a factual question "properly presented to a jury"); *Morrison v. Phillips*, Civ. No. 06–00812, 2008 WL 4308215, at *11 (D.N.J. Sept. 16, 2008) (noting that the question of whether the defendants are entitled to qualified immunity can be determined only after the jury resolves the factual question of whether the defendants use of force violated the plaintiff's constitutional rights). Beyond reciting the standard for qualified immunity and reiterating their argument as to why the excessive force should be dismissed, defendants do not expressly argue how or why Robostello is entitled to qualified immunity. (Mov. Br. pp. 32, 33; Reply Br. p. 12.)

### b. <u>False Arrest/Imprisonment</u>

"Claims under [Section] 1983 for false arrest and false imprisonment are grounded in the Fourth Amendment protection against unreasonable seizures." *Tucker v. City of Philadelphia*, 679 F. Supp. 3d 127, 137 (D.N.J. 2023). To survive dismissal on false arrest/imprisonment claims, a plaintiff must allege facts showing that he was arrested without probable cause or detained without legal process. *Id.*; *James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012). "Probable cause for an arrest exists 'whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.'" *Tucker*, 679 F. Supp. 3d at 137 (quoting *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).

Defendants incorporate by reference their excessive force argument in support of their position that these claims should be dismissed. (*See* Mov. Br. p. 33; Reply Br. p. 12.) Plaintiff asserts that his detention was without legal justification. (Opp'n Br. p. 30.) Plaintiff, however, also notes that he "does not dispute … Robostello's authority to handcuff [him] to get the scene under control." (*Id.* p. 12.) As such, plaintiff seemingly concedes that he was not falsely arrested or imprisoned.

The record demonstrates that after plaintiff was handcuffed and seated inside a patrol vehicle, plaintiff was uncuffed and advised that he was not under arrest. (Mov. Br. Ex. D–10 at 4:19, 20:40–24:40.) Furthermore, plaintiff does not indicate that police accompanied him to the hospital in the ambulance. *See James*, 700 F.3d at 683 (weighing the fact that the plaintiff was not accompanied by police inside the ambulance in favor of dismissing the plaintiff's false imprisonment claim). Thus, the record supports finding that plaintiff

was not seized within the meaning of the Fourth Amendment. *See id.*[8] Since no dispute exists that Robostello properly handcuffed plaintiff to control the scene, the Motion will be granted as to these claims.

### c. Abuse of Process

"[A] [S]ection 1983 claim[] for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Kazar v. City of Camden*, No. 15–01527, 2016 WL 680432 (D.N.J. Feb. 19, 2016) (quoting *Rose v. Bartle*, 871 F.2d 331, 350 (3d Cir. 1989). "The gravamen of an abuse of process tort 'is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends.'" *Id.* (quoting *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994)). "Cognizable injury for abuse of process is limited to the harm caused by the misuse of process, and does not include harm (such as conviction and confinement) resulting from that process[] being carried through to its lawful conclusion." *Id.* (quoting *Heck*, 512 U.S. at 486 n.5). "To establish an abuse of process claim 'there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of [the] process.'" *Id.* (alteration in original) (quoting *Ference v. Twp. Of Hamilton*, 538 F.Supp.2d 785, 798 (D.N.J. 2008)).

Plaintiff's abuse of process claim is based upon Robostello allegedly making false statements about the incident, falsifying records, and mishandling and/or withholding evidence to initiate municipal court proceedings against

---

[8] To the extent defendants argue that Robostello is entitled to qualified immunity as to the false arrest/imprisonment claims, I find that because plaintiff concedes that Robostello had the right to handcuff him and that his statutory and constitutional rights were not violated, Robostello is shielded from these claims. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

plaintiff.  (Compl. ¶¶ 35, 36.)  However, neither the pleadings, Motion papers, nor record make any reference to these allegations.  A complete review of the record indicates that plaintiff was not charged in connection with this incident. Although the allegations relating to the abuse of process claim appear in paragraphs 35 and 36 of the Complaint, there is no evidence in the Motion-record to support plaintiff's claims that Robostello made false statements and withheld evidence.

Defendants argue that this claim should be dismissed because, like the false arrest/imprisonment claim, plaintiff concedes that Robostello had the authority to handcuff him.  (Mov. Br. p. 33; Reply Br. p. 12.)  Plaintiff makes no effort to defend this claim.  (*See generally* Opp'n Br.)  Because it is well settled that "[a] party's 'failure to respond to the defendant's arguments on summary judgment constitutes an abandonment of th[o]se causes of action,'" summary judgment as to this claim is warranted on this basis alone.  *Greene v. Elizabeth Police Dep't*, No. 18–08972, 2023 WL 6233124, at *5 (D.N.J. Sept. 26, 2023) (quoting *Brenner v. Twp. of Moorestown*, No. 09–00219, 2011 WL 1882394, *11 (D.N.J. May 17, 2011)).

### 2. Claims against the Township and Francesco

Plaintiff asserts claims against the Township and Francesco for failure to train and failure to conduct internal affairs investigations.  (Compl. ¶¶ 38–45.) Plaintiff alleges that had the Township's officers been provided adequate use of force training, he would not have been injured.  (Opp'n Br. pp. 31–36.) Plaintiff cites to Robostello's deposition testimony where he testified that he did not prepare a use of force report—when his use of force report was produced in discovery—as evidence that the Township's officers do not understand what constitutes physical force.  (*Id.* p. 32.)  As to the failure to investigate claim, plaintiff asserts that although he did not pursue filing an internal affairs

14

complaint against Robostello, the Township had a responsibility to initiate its own investigation into Robostello. (*Id.* pp. 36–44.) Defendants counter that because plaintiff has produced no evidence of an unconstitutional policy or deliberate indifference nor an underlying constitutional violation, these claims must be dismissed. (Mov. Br. pp. 33, 34; Reply Br. pp. 12–15.)

"To establish a [Section] 1983 municipal liability claim, a plaintiff 'must demonstrate that the violation of rights was caused by the municipality's policy or custom.'" *Kaplon*, 2025 WL 892884, at *8 (quoting *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014)). "A successful *Monell* claim must therefore establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom." *Id.*

### a. Failure to Train

"When deciding if a [municipality] should be liable for failure to train or supervise its officers, 'the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.'" *Adams v. City of Atl. City*, 294 F. Supp. 3d 283, 304 (D.N.J. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "For liability to attach, the identified deficiency in a [municipality's] training program must be closely related to the plaintiff's injury." *Id.* "The reason for this high standard is because to adopt a lower standard of fault and causation "would open municipalities to unprecedented liability under [Section] 1983." *Id.* (quoting *City of Canton*, 489 U.S. at 392). Therefore, such a claim can only succeed if a plaintiff shows the municipality's "failure to train constituted deliberate indifference to the constitutional rights of the citizens who come in contact with the police." *Id.*

Similarly, to hold an official liable for failure to supervise based on a policy or practice, a plaintiff must first "identify a supervisory policy or practice that the supervisor failed to employ." *Womack v. Moleins*, No. 10–02932, 2015 WL

420161, at *3 (D.N.J. Jan. 30, 2015) (quoting *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014). The plaintiff must provide sufficient facts that, if true, would show: "(1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory practice or procedure." *Id.* (quoting *Barkes*, 766 F.3d at 317).

"[F]ailure to adequately train or supervise can only constitute deliberate indifference if the failure has caused a pattern of violations." *Id.*; *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (holding that "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train"). Plaintiff notes that between 2012 and 2019, the Township's police department reported using force 61 times, six of which were incidents involving Robostello. (Opp'n p.34). Plaintiff, however, does not indicate whether these 61 incidents constituted constitutional violations or were the result of a failure to train. Absent a showing of a pattern of violations, this aspect of plaintiff's claim will be dismissed. *See Womack*, 2015 WL 420161, at *3; *Connick*, 563 U.S. at 62.

### b.     Failure to Investigate

"A custom of failing to investigate citizen complaints may provide a basis for municipal liability if 'a policy-maker (1) had notice that a constitutional violation was likely to occur, and (2) acted with deliberate indifference to the risk.'" *Merman v. City of Camden*, 824 F. Supp. 2d 581, 589 (D.N.J. 2010) (quoting *Brice v. City of York*, 528 F.Supp.2d 504, 518 (M.D.Pa. 2007)). "It is not enough that an investigative process be in place." *Beck v. City of Pittsburgh*, 89 F.3d 966, 969–70 (3d Cir. 1996). Instead, "[t]he investigative process must be real" and "have some teeth" such that a citizen has at least a

16

rudimentary chance of redress when injustice is done." *Id.* at 974. "The mere fact of investigation for the sake of investigation does not fulfill a city's obligation to its citizens."

Plaintiff points to various internal investigations policies of the Township and New Jersey Attorney General Office, which plaintiff alleges defendants violated by not further investigating Robostello. (Opp'n pp. 36–44.) However, to succeed on such a claim, a plaintiff must demonstrate that the municipality has "a custom of ignoring or failing to properly and promptly investigate unconstitutional excessive force complaints" against officers. *See Noble v. City of Camden*, 112 F. Supp. 3d 208, 223 (D.N.J. 2015) (finding that when viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find the township liable for failing to investigate reports of excessive force). Although defendants were aware of plaintiff's claims as to Robostello, plaintiff fails to demonstrate how "a reasonable jury could … find evidence in the record connecting the failure to investigate with the constitutional violation at issue in this case." *Id.*; *Beck,* 89 F.3d at 971 (noting that custom may "be established by evidence of knowledge and acquiescence"); *Monaco v. City of Camden,* No. 04–2406, 2008 WL 8738213, at *8, 9 (Apr. 14, 2008) (finding that a reasonable jury could draw a causal connection between the plaintiff's injuries and officers' actions and the municipality's failure to conduct adequate investigations into complaints of police misconduct until nearly three years after the incident). This one example of how defendants allegedly failed to investigate, fails to sufficiently establish this claim. *See Noble*, 112 F. Supp. 3d at 223 (noting that the plaintiff presented statistical evidence as to the police department's repeated failures to investigate in support of such a claim). The failure to train aspect of plaintiff's claim will also be dismissed.

### B. <u>NJTCA</u>

As to plaintiff's assault and battery, intentional infliction of emotional distress, and negligence claims, defendants broadly incorporate by reference their arguments as to the other claims and argue that good faith immunity applies. (Mov. Br. pp. 32, 33; Reply Br. p. 12.) Similarly, plaintiff relies upon his false arrest/imprisonment arguments. (Opp'n Br. p. 30.) While defendants seek dismissal of these claims, these issues have not been briefed by the parties. Accordingly, the Motion will be as to the NJTCA claims.

### V. CONCLUSION

For the reasons stated above, the Motion is **GRANTED in part** and **DENIED in part**.

                                             */s/ Edward S. Kiel*
                                             EDWARD S. KIEL
                                             UNITED STATES DISTRICT JUDGE

Dated: August 12, 2025